**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:09-CR-49 |
| | § | |
| PEDRO IBARRA-LOERA | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Pedro Ibarra-Loera's ("Ibarra-Loera") *pro se* Motion for Sentence Reduction (#64), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to his medical condition and age as well as the threat of Coronavirus Disease 2019 ("COVID-19"). The Government filed a response in opposition (#66). United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On April 8, 2009, a federal grand jury in the Eastern District of Texas returned a two-count Indictment charging Ibarra-Loera in Count 1 with Possession With the Intent to Distribute or Dispense Methamphetamine, in violation of 21 U.S.C. § 841(a), and in Count 2 with Use, Carrying, or Possession of a Firearm During, in Relation to, or in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1). More than two years later, after fleeing to Mexico, Ibarra-Loera was arrested in Laredo, Texas, in the Southern District of Texas. On November 2, 2011, Ibarra-Loera pleaded guilty to Count 1 of the Indictment pursuant to a non-binding plea agreement; thereafter, the court dismissed Count 2. Subsequently, on November 7, 2012, the court sentenced Ibarra-Loera to 188 months' imprisonment, to be followed by a

four-year term of supervised release.  Ibarra-Loera appealed his conviction, and, on January 6,

2014, the United States Court of Appeals for the Fifth Circuit dismissed his appeal as frivolous.

On September 21, 2015, the court reduced Ibarra-Loera's term of imprisonment to 151 months

pursuant to 18 U.S.C. § 3582(c)(2).  Ibarra-Loera is currently housed at the contracted

correctional institution Big Spring (Flightline) ("CI Big Spring (Flightline)"), located in Big

Spring, Texas.  His projected release date is April 8, 2022.  Upon his release, Ibarra-Loera is

subject to an Immigration and Customs Enforcement detainer lodged on February 4, 2016.

II.    Appointment of Counsel

Ibarra-Loera requests the appointment of counsel to assist him in filing a motion for

compassionate release under 18 U.S.C. § 3582(c).  There is no constitutional right to appointed

counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The

right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v.

Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95

(1991); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every

federal court of appeals to address the issue has agreed that there is no constitutional (or statutory)

right to appointed counsel in § 3582(c) proceedings."); *Whitaker v. Collier*, 862 F.3d 490, 501

(5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th

Cir.), *cert. denied*, 571 U.S. 952 (2013).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in

the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with

factually and/or legally complex issues.  *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th

Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the

discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Ibarra-Loera is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Ibarra-Loera provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. A motion "for compassionate release is not particularly complex factually

or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020).  In any event, Ibarra-Loera has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel.  Ibarra-Loera is 59 years old and there is no indication that he is seriously ill, disabled, or otherwise a candidate for compassionate release.  Thus, the court finds that the discretionary appointment of counsel is not warranted.  *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require").  Accordingly, Ibarra-Loera's request for appointment of counsel is denied.

III.   <u>Compassionate Release</u>

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the

>defendant is not a danger to the safety of any other person or the
>community, as provided under section 3142(g);
>
>and that such a reduction is consistent with applicable policy statements
>issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though

5

[the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F. 4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, on July 21, 2021, Ibarra-Loera submitted a request for compassionate release to the administrator of his facility based on his age and physical health.  Ibarra-Loera's request was denied on July 25, 2021, and his appeal of that decision was denied on August 32, 2021.  Although Ibarra-Loera complied with the exhaustion requirement before filing the instant motion,

nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

    B.   <u>Criteria for Release</u>

The Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). A review of dictionary definitions also sheds light on the meaning of these terms. The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021). "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

### 1.   Medical Condition

In the instant motion, Ibarra-Loera contends that he is eligible for compassionate release due to his medical condition—specifically, that he suffers from hyperthyroidism, hypertension (high blood pressure), and high cholesterol, as well as lower back and knee joint pains. Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or

cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).   When interviewed in connection with his Presentence Investigation Report ("PSR"), prepared on February 27, 2012, Ibarra-Loera reported that he had been diagnosed with high blood pressure in 2010 and that he was taking medication to treat the condition.   Ibarra-Loera's BOP medical records confirm that he has been diagnosed with hypertension (mild), hyperlipidemia (high cholesterol), and hyperthyroidism, as well as lower back and knee joint pain related to osteoarthritis.   He is currently prescribed amlodipine, lisinopril, and aspirin to control his hypertension, simvastatin to treat his hyperlipidemia, methimazole to manage his hyperthyroidism, acetaminophen and naproxen to aid with his lower back and knee joint pain, and pepcid.   Ibarra-Loera's most recent blood pressure readings contained in his medical records—118/74 on August 10, 2021, 112/74 on June 16, 2021, 110/70 on June 8, 2021, 122/68 on May 4, 2021, and 116/68 on April 13, 2021—indicate that he is either merely "at risk" of having high blood pressure or does not have it.[4]   In any event, his blood pressure is well controlled with medication.

Furthermore, Ibarra-Loera is classified as a BOP Medical Care Level 2 inmate.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months.  Their medical and

---

[4] According to the Centers for Disease Control and Prevention ("CDC"), a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring.  Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."

None of Ibarra-Loera's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release.  *See Thompson*, 984 F.3d at 433.  To the contrary, Ibarra-Loera's afflictions are well managed with medication and monitoring.  *See id.*  The court acknowledges that, according to the CDC website, one of Ibarra-Loera's reported underlying medical conditions, hypertension, can make him more likely to become severely ill should he contract COVID-19; nonetheless, such a commonplace malady does not make Ibarra-Loera's case "extraordinary." *See id*. at 434.

According to the CDC, 45% of the adults in the United States (108 million) have hypertension, and of those, only about 24% have their condition under control.  In addition, more than 12% of the adult population of the United States (29 million) has high cholesterol.  In view of their pervasiveness, high blood pressure and high cholesterol cannot be deemed "extraordinary" in order to merit compassionate release.  *See id.* (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Hodgin*, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (denying compassionate release to inmate who suffers from hypertension, hyperlipidemia, kidney disease, Type 2 diabetes, arthritis, and several other medical conditions); *United States v. Slone*, No. 7:12-05-KKC-4, 2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021)

(holding that inmate who suffered from heart disease (for which he had a stent), chronic obstructive pulmonary disease (COPD), high cholesterol, obesity, and depression had not established extraordinary and compelling reasons for compassionate release as his condition was not terminal and did not diminish his ability to provide self-care within the prison environment); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence).

In this instance, Ibarra-Loera's BOP records reveal that he is housed in general population, is ambulatory, has regular duty work assignments, is cleared for food service, and his current work detail is as a recreation worker. In his motion, Ibarra-Loera admits that he does not require durable medical equipment, assistance with self-care such as bathing, walking, and toileting, or an assisted living environment. Hence, he is able to provide self-care in the institutional setting and is not limited in his activities of daily living. Thus, Ibarra-Loera has failed to establish the existence of medical problems that would constitute extraordinary and compelling reasons to reduce his sentence.

2.      Age

Ibarra-Loera also asserts that he is eligible for compassionate release due to his age. While not binding on the court, the U.S.S.G. provide that extraordinary and compelling reasons exist as to a defendant's age when:

12

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B).  Here, according to Ibarra-Loera's PSR, he is 59 years of age, and there is no indication that he is experiencing serious deterioration in his physical or mental health.  Therefore, the court does not find that Ibarra-Loera's age constitutes an extraordinary and compelling reason justifying compassionate release.

As an alternative to finding "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(ii) allows modification of a term of imprisonment for age-related reasons when:

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g).

18 U.S.C. § 3582(c)(1)(A)(ii).  Here, Ibarra-Loera is only 59 years of age, which is less than the stated minimum age of 70.  Moreover, he has not served at least 30 years in prison, and it does not appear that his sentence was imposed pursuant to § 3559(c).  Accordingly, Ibarra-Loera also does not meet the statutory requirements for age-related compassionate release set forth in 18 U.S.C. § 3582(c)(1)(A)(ii).

3.   COVID-19

Ibarra-Loera also expresses concerns regarding the spread of COVID-19 among the prison population.  Nevertheless, as of November 23, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 148) at CI Big Spring (Flightline) as having confirmed positive cases of COVID-19, 34 inmates who have recovered, and 1 inmate who

13

succumbed to the disease.  Thus, it appears that the facility where Ibarra-Loera is housed is handling the outbreak appropriately and providing adequate medical care.

Although Ibarra-Loera expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Ibarra-Loera, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even

in conjunction with preexisting health conditions, is insufficient to establish extraordinary and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff.  To date, the BOP has administered approximately 255,278 doses of the vaccine. Indeed, according to Ibarra-Loera's BOP medical records, he received the first dose of the Pfizer-BioNTech vaccine on April 29, 2021, and the second dose on May 19, 2021.  In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19.  *See United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex.

May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

4.    Other Reasons

In his motion, Ibarra-Loera also seeks a reduction in his sentence because he claims that his "sentence was unfair and excessive for a nonviolent offense," and if he "were sentenced today [he] would receive a lesser sentence." Ibarra-Loera's arguments constitute nothing more than an attempt to revisit determinations made years ago at the time of his sentencing in 2012. It has long been recognized that "[t]he principle of finality . . . is essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989). Indeed, as the Supreme Court has observed, "[a] final judgment commands respect." *United States v. Frady*, 456 U.S. 152, 165 (1982). "Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume that he stands fairly and finally convicted." *Id*. at 164. Appreciating the importance of finality, Justice Harlan stated in his concurring opinion in *Mackey v. United States*:

16

> No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.

401 U.S. 667, 691 (1971).  This principle of finality forecloses Ibarra-Loera's current endeavor to circumvent the limitations on post-conviction relief by challenging determinations made long ago at sentencing under the guise of a compassionate release motion.

When he was sentenced in 2012, Ibarra-Loera's sentencing guideline range was 188 months to 235 months of imprisonment, based on a total offense level of 36 and a criminal history category of I.  In connection with his conviction, Ibarra-Loera was found to be responsible for 163.21 grams of methamphetamine with a purity level of 48%, resulting in 78.34 net grams of methamphetamine (actual).  The U.S.S.G. in effect at that time mandated that such a quantity yielded a base offense level of 32.  Ibarra-Loera received a 2-level enhancement for possession of a dangerous weapon (a firearm), pursuant to U.S.S.G. § 2D1.1(b)(1), and a 2-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1.  The latter enhancement resulted from his failure to appear on related state charges and his flight to Mexico in 2009 after he was charged with the underlying federal crimes; thereafter, he remained in Mexico for over two years until he was finally apprehended in Laredo, Texas, in 2011.  He did not receive a reduction for acceptance of responsibility due to his flight and obstruction of justice.  Accordingly, Ibarra-Loera's total offense level was 36.

Under the current guidelines, however, the applicable base offense level is 30, making Ibarra-Loera's total offense level 34, which sets the applicable guideline range at 151 months to 188 months of imprisonment.  Ibarra-Loera previously submitted a Motion for a Reduction of

Sentence based on this change in the applicable sentencing guidelines, and, on September 21, 2015, the court reduced his sentence to 151 months of imprisonment, the bottom of the guidelines range.  Thus, the court has already adjusted Ibarra-Loera's sentence to account for the change in the sentencing guidelines, and Ibarra-Loera's present complaint is without basis.  In short, Ibarra-Loera has not presented any extraordinary and compelling reasons warranting a reduction of his sentence.

     C.     <u>Section 3553(a) Factors</u>

     The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Ibarra-Loera's offense of conviction stems from his possession with intent to distribute methamphetamine in the Denison, Texas, area.  In July 2008, detectives with the Denison Police Department began receiving information from confidential sources and other law enforcement agencies that Ibarra-Loera and his two sons were distributing cocaine and methamphetamine in Denison.  On March 6, 2009, officers executed a search warrant at Ibarra-Loera's residence where they discovered 78.34 net grams of methamphetamine (actual), a Sterling Arms .22 caliber pistol loaded with 6 rounds of ammunition, a Remington Speedmaster .22 caliber rifle, numerous plastic baggies, and $4,500.00 in United States currency.  He admitted that he received the rifle in payment for a drug transaction.

Ibarra-Loera was arrested that day and released on bond the next day with the condition that he subsequently appear in court.  The complaint underlying his federal drug charges was filed shortly after he was released on bond.  Ibarra-Loera failed to appear for a scheduled hearing in state court on July 23, 2009, and a warrant for his arrest was issued.  Ibarra-Loera informed Probation that he went to Mexico in 2009.  Two years later, he was arrested in Laredo, Texas, upon his return to the United States.

Ibarra-Loera's criminal history includes a prior conviction for driving while intoxicated ("DWI").  He was also illegally residing in the United States at the time of his offense of conviction.  Moreover, Ibarra-Loera has a history of substance abuse, including the use of methamphetamine while he was selling the drug and an apparent alcohol problem leading to his DWI conviction.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693.  Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release under the circumstances.  *Id.* at 693-94; *accord Keys*, 846 F. App'x at 276 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal").  Ibarra-Loera's history of violating the conditions of his bond and fleeing to Mexico to avoid prosecution "calls into question his respect for the law and whether he would abide by his conditions of supervised release in this case if his motion for compassionate release were granted." *United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *3 (E.D. Tenn. Nov. 2, 2021).  In addition, although Ibarra-Loera has not

incurred any disciplinary violations while incarcerated and is subject to deportation to Mexico upon his release, "[m]ost nonviolent criminals maintain good disciplinary records" and his removal to Mexico "was known from the outset and played a role in setting the original sentence." *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021). Moreover, in light of his offense of conviction, engaging in methamphetamine trafficking with his sons while possessing firearms, the court finds that "[s]ending [the defendant] overseas will not guarantee the safety of people in this nation or any other." Thus, in view of the nature and circumstances of his offense of conviction involving drugs and firearms, his obstruction of justice, his criminal history, his illegal presence in the United States, and his history of substance abuse, the court cannot conclude that Ibarra-Loera's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). In this instance, there is no reason to believe that Ibarra-Loera would not revert to his prior drug-dealing and drug-abusing behavior as well as his unlawful possession of firearms if released from prison at this time.

IV.   Conclusion

In sum, Ibarra-Loera has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail,

alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Ibarra-Loera's *pro se* Motion for Sentence Reduction (#64) is DENIED.

SIGNED at Beaumont, Texas, this 24th day of November, 2021.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE